UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LINDA FEKETY, as Administratrix to the Estate of James Kennedy, III, </br></br>        Plaintiff,</br></br>    v.</br></br>WELLPATH, *et al.*,</br></br>        Defendants. | CASE NO.  4:22-cv-1667</br></br>JUDGE BRIDGET MEEHAN BRENNAN</br></br>**MEMORANDUM OPINION**</br>**AND ORDER** |

Before the Court is a motion to dismiss the Complaint filed by two of the named defendants, Mahoning County and Deputy Jacob Hocevar.  (Doc. No. 9.)  Plaintiff filed a brief in opposition (Doc. No. 11), and the moving defendants replied (Doc. No. 12).  For the reasons that follow, the motion is GRANTED.

**I.    Facts Alleged in the Complaint**

The following allegations are taken as true for purposes of resolving a motion to dismiss.

On or around October 22, 2019, the decedent James Kennedy, III ("Kennedy") was booked into the Mahoning County Jail ("MCJ") on a charge of parole violation.  (Doc. No. 1 at ¶¶ 3, 11.)  Sometime during his approximately ten-month incarceration at MCJ, Kennedy developed a severe case of acute pancreatitis.  (*See id.* ¶¶ 11, 14.)[1]

> As Kennedy's condition worsened while he was an inmate at the Jail, the progress of his disease was overtly apparent from Kennedy's overall appearance,

---

[1] "Acute pancreatitis is 'uncommon.'"  *United States v. Hopkins*, 594 F. Supp. 3d 852, 859 (E.D. Mich. 2022) (quoting medical literature), *aff'd*, No. 22-1170, 2022 WL 18955859 (6th Cir. Oct. 6, 2022).  The Complaint does not allege that Kennedy had a related pre-existing condition or that he suffered from chronic pancreatitis.

1

> and complaints that Kennedy voiced to the Jail staff and Jail medical staff. Also, as Kennedy's condition deteriorated, other inmates commented to Corrections Officers and other members of the Jail staff and the Jail medical staff that something was seriously wrong with Kennedy.

(*Id.* ¶ 11.)

It is alleged that MJC personnel failed to pay "minimal attention to the obvious deterioration of Kennedy's condition, the complaints made by Kennedy, and the reports about Kennedy's condition from other inmates[.]" (*Id.* ¶ 12.) Had they done so, "it would have been clear to those members of the Jail staff and Jail medical staff that Kennedy needed substantial and immediate medical attention. The Jail staff and Jail medical staff did not provide or secure obviously needed medical attention for Kennedy." (*Id.*)

The Complaint then alleges that defendants "knew or should have known that Kennedy was in acute medical distress for an extended period of time [,] that Kennedy was in dire need of proper medical attention . . . [and] that Kennedy would suffer serious health consequences and likely death." (*Id.* ¶ 13.)

On or around August 26, 2020, MJC transported Kennedy to a local hospital. It is alleged that his pancreatitis already "had become[] so advanced that there was little chance that Kennedy would survive. On or about September 27, 2020, while still a patient . . . Kennedy died. The cause of Kennedy's death was acute pancreatitis[.]" (*Id.* ¶ 14.)

On September 19, 2022, the administrator of Kennedy's estate filed suit in this Court. The Complaint alleges that the defendants "were deliberately indifferent to the medical needs and welfare of Kennedy," which resulted in his death. (*Id.* ¶ 15.) It is alleged that they denied Kennedy due process – both substantive and procedural – and deprived him of his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.*)

## II. Law and Analysis

### A. Standard of Review

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (setting forth the standard of review for a motion to dismiss); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The concept of facial plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of liability]." *Twombly*, 550 U.S. at 556. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). As such, the court will not permit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . ." *Id.* at 778 (citations omitted).

3

If a plaintiff pleads facts that reveal a flaw in the claim or substantiate a defense, she may plead herself out of federal court. In other words, "sometimes the allegations in the complaint affirmatively show that the claim is [deficient or disallowed as a matter of law]. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

### B. Estate Administrator Standing

"[T]he forum state's law determines whether a § 1983 claim survives an individual's death." *Est. of Majors v. Gerlach*, 821 F. App'x 533, 537 (6th Cir. 2020). Section 1983 claims "are best characterized as tort actions for the recovery of damages for personal injury[.]" *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)).

Ohio's survivorship statute provides that "causes of action for . . . injuries to the person . . . may be brought notwithstanding the death of the person entitled . . . thereto." Ohio Rev. Code § 2305.21; *see also Crabbs v. Scott*, 880 F.3d 292, 294 (6th Cir. 2018). Accordingly, the administrator of Kennedy's estate may pursue Kennedy's Section 1983 claims.

### C. Timeliness of Deliberate Indifference Claim

"The statute of limitations for § 1983 claims is the relevant state's statute of limitations for personal-injury torts. In Ohio, a two-year statute of limitations applies to § 1983 claims. Although the statute of limitations is determined by state law, the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Beaver St.*

4

*Invs., LLC v. Summit Cnty., Ohio*, 65 F.4th 822, 826 (6th Cir. 2023) (quotations and citations omitted). "The limitations period . . . begins to run when a plaintiff has a complete and present cause of action[.] A complete cause of action arises when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quotations and citations omitted). The "Court looks to what event should have alerted the typical lay person to protect his or her rights." *Id.*

The cause of action at issue here is deliberate indifference to a prisoner's serious medical needs. (Doc. No. 1 at ¶¶ 15, 17.) A plaintiff with such an Eighth Amendment claim must prove both objective and subjective components. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Vinson v. Michigan Dep't of Corr.*, 788 F. App'x 312, 315-16 (6th Cir. 2019). The objective inquiry goes to the nature of what has been inflicted upon or denied to an inmate. "[T]he deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. . . . [T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (quotations and citations omitted).

The subjective inquiry examines whether each defendant has a "sufficiently culpable state of mind." *Id.* "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under our cases be condemned as the infliction of

5

punishment." *Id.* at 838. A defendant necessarily must be aware of a risk in order to be deliberately indifference to it. *See id.* at 840-41. "Mere negligence in identifying or treating a medical need does not rise to the level of an Eighth Amendment violation." *Vinson*, 788 F. App'x at 316 (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

In *Gerlach*, the prisoner "was aware of his injury – Defendants' failure to treat him and the resulting exacerbation of his MS – well before the time of his death. As shown by his various complaints and requests for treatment to prison medical staff, [the prisoner in *Gerlach*] knew of Defendants' refusal to treat his illness and of the resulting need to 'protect his . . . rights.'" 821 F. App'x at 538. The Sixth Circuit concluded in *Gerlach* that the claim accrued while the inmate was still alive and complaining to prison officials that his condition was worsening and required treatment. *See id.* (citing *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003) ("[W]e look to the event that should have alerted the typical lay person to protect his or her rights.")).

Here, Kennedy was still alive when "the progress of his disease was overtly apparent from Kennedy's overall appearance." (Doc. No. 1 at ¶ 11.) This resulted in "complaints that Kennedy voiced to the Jail staff and Jail medical staff." (*Id.*) Not only was Defendants' worsening condition palpable to Kennedy himself, the Complaint alleges that other inmates commented to MJC staff that "something was seriously wrong with Kennedy." (*Id.*)

Plaintiff is "entitled to bring claims that would not have been time-barred had [Kennedy] attempted to bring them while he was alive." *Gerlach*, 821 F. App'x at 537. Under Ohio law, Kennedy (and his estate) had two years to file claims against MJC and its personnel based on deliberate indifference to his medical condition during his incarceration at MJC. *See* Ohio Rev. Code § 2305.10 ("[A]n action for bodily injury or injuring personal property shall be brought

6

within two years after the cause of action accrues."); *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989); *Nadra v. Mbah*, 893 N.E.2d 829, 835 (Ohio 2008).

Based on the pleaded facts reviewed above, a typical inmate would have been alerted to MJC's alleged failure to address a worsening medical condition. The "obvious deterioration" of Kennedy's health allegedly revealed "obviously needed medical attention for Kennedy." (Doc. No. 1 at ¶ 12.) This allegedly obvious injury occurred during Kennedy's confinement at MJC. Kennedy's claim thus accrued by or before August 26, 2020 – the date MJC sent Kennedy to the hospital. (*See id.* ¶ 14.)

The limitations period for claims against MJC personnel expired by August 26, 2022, which was calculated from the date on which Kennedy was transferred from MJC to a local hospital. Plaintiff's estate did not file the Complaint until September 19, 2022. That was after the statute of limitations had expired as to the moving defendants. For these reasons, Plaintiff's deliberate indifference claim under the Eighth Amendment against Defendants Mahoning County and Deputy Hocevar is dismissed.

### D. Due Process Claims

Alongside references to the Eighth Amendment, Plaintiff twice mentions deprivations of "substantive due process of law [and] procedural due process of law." (*Id.* ¶¶ 15, 17.) Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause has both procedural and substantive components. *See generally EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

The list of liberty interests and fundamental rights for substantive protection "is short, and the Supreme Court has expressed very little interest in expanding it." *EJS*, 698 F.3d at 860

7

(quoting *Seal v. Morgan*, 229 F.3d 567, 574-75 (6th Cir. 2000)).  A court must "first carefully define the asserted right and then ask whether it is deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* at 860 (quotations and citations omitted).  A defendant's alleged conduct must be so heinous and arbitrary that it can fairly be said to "shock the conscience." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996).

"The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard 'in a meaningful manner.'" *Engler v. Arnold*, 209 F. Supp. 3d 988, 991 (N.D. Ohio 2016), *aff'd*, 862 F.3d 571 (6th Cir. 2017) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  The Supreme Court has explained that "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim unless the State fails to provide an adequate post-deprivation remedy." *Zinermon v. Burch*, 494 U.S. 113, 115 (1990).

Here, the moving defendants argued that "naked assertion[s] devoid of 'further factual enhancement' will not survive a motion to dismiss." (Doc. No. 9 at 74 (quoting *Iqbal*, 556 U.S. at 678).)

> A Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements.  District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments.  * * *  Moreover, the failure to identify a particular legal theory in [a] complaint places an unfair burden on the Defendants to speculate on the potential claims that Plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action.  Even liberally construed, the Complaint does not sufficiently state another federal constitutional claim or claims upon which Plaintiff intends to base [t]his § 1983 action.

8

*Lacy v. Sheldon*, No. 1:10-cv-1974, 2011 WL 93719, at *3 (N.D. Ohio Jan. 11, 2011) (Sixth Circuit citations omitted).

"The complaint is particularly important here, because substantive due process is an undefined area where 'guideposts for responsible decisionmaking . . . are scarce and open-ended' . . . ." *Guertin v. State*, 912 F.3d 907, 946 (6th Cir. 2019) (McKeague, J., concurring) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Plaintiff does not articulate a particular form of liberty interest on which to base a substantive process claim. Moreover, the "failure to discuss more thoroughly [the] liberty interest makes it difficult to analyze whether [Kennedy] suffered a deprivation." *EJS*, 698 F.3d at 859.

Plaintiff also does not plead a post-deprivation lack of procedural opportunity to be heard. *Cf. Bazzetta v. McGinnis*, 430 F.3d 795, 803 (6th Cir. 2005). For example, Plaintiff does not plead that he filed some internal grievance regarding lack of medical care that went ignored or unresolved. Nor does the Complaint specify procedural mechanisms for requesting medical care at MJC or any lack thereof.

In any event, the two undeveloped references to due process cover identical ground as the Eighth Amendment deliberate indifference claim. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994).

For these reasons, Plaintiff's Complaint fails to state plausible claims for relief under the Due Process Clause of the Fourteenth Amendment. The due process claims against the moving defendants are dismissed.

### E. State Law Wrongful Death

In response to the motion to dismiss, Plaintiff asserted that she pleaded "a wrongful death claim" under Ohio law.  (Doc. No. 11 at 94.)  The moving defendants argue that Plaintiffs did not plead such a claim.  (Doc. No. 12 at 104-07.)

The elements of a wrongful death claim under Ohio law are: (1) death of the decedent; (2) commencement of the action within two years thereafter; (3) a wrongful act, neglect or default of defendant that proximately caused the death and would have entitled the decedent to maintain an action and recover damages had he not died; (4) decedent was survived by a spouse, children, parents or other next of kin; and (5) survivors have incurred damages as a result of the wrongful death.  *Bailey v. United States*, 115 F. Supp. 3d 882, 889 (N.D. Ohio 2015) (citing *Mansour v. Woo*, No. 2011-A-0038, 2012 WL 1493862, *7 (Ohio Ct. App. 2012)).

The Complaint does not identify a survivor or next of kin.  Plaintiff did not develop any legal argument that an estate administrator satisfies the fourth element of the cause of action.  Moreover, Plaintiff's allegation of subject-matter jurisdiction does not refer to supplemental jurisdiction over a state-law claim.  Rather, Plaintiff pleaded only jurisdiction over federal law claims.  (*See* Doc. No. 1 at ¶ 1.)  Plaintiff has not filed a motion for leave to amend the Complaint.

For these reasons, the Court concludes that Plaintiff did not plead a wrongful death claim under Ohio law.

### III. Conclusion

For the reasons above, the motion to dismiss filed by Mahoning County and Deputy Hocevar is GRANTED. Mahoning County and Deputy Hocevar are dismissed as parties from this case.

**IT IS SO ORDERED.**

**Date:** October 12, 2023

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE